## MESHKE VS. VAN DOREN.

Chapt. 361, Laws of 1860, conferring upon the county court of *Winnebago* county jurisdiction equal to and concurrent with the circuit court, for all sums not exceeding $500, is a public act, of which the courts will take judicial notice; and the jurisdiction of such court need not be specially alleged in an action brought therein, where the value of the claim and its amount appear from the complaint to be within the jurisdiction of the court.

A complaint for a money demand, alleging that the defendant on, &c., became and was indebted, without stating that he *still is* indebted &c., may be amended by inserting an allegation of present indebtedness at the trial without costs, and without serving a copy of the amended complaint, and he be required to answer it if he desires to do so, *instanter;* and it is proper to make such amendment by interlining the same in the original complaint, notwithstanding it has been verified.

Where the judge of the court below was requested to reduce the charge to writing, in the absence of anything in the record to the contrary, it will be presumed that such request was complied with.

Meshke vs. Van Doren.

Where a quantity of wheat, the property of the defendant, had been seized on an attachment, and he succeeded on the trial of a traverse of the affidavit for the writ, and the property had been ordered to be re-delivered to the defendant, and it appeared that wheat bore about the same market value when it was re-delivered as when it was seized, though it had in the meantime advanced considerably. *Held.* That in assessing the defendant's damages by reason of such seizure and detention, that he was not entitled to the benefit of such advance without showing that he could or would have sold it for that price.

In such case, the defendant is entitled to recover damages for any loss he has sustained in consequence of being deprived of the use and control of his property during the pendency of the attachment, or for any injury thereto, or loss thereof, together with the costs incurred by him on the trial of the traverse.

A note or security, void on account of being usurious, given by a debtor to his creditor in satisfaction or payment of his previous valid indebtedness, does not discharge or extinguish it. PAINE, J., *dissenting.*

APPEAL from the County Court for *Winnebago* County.

The complaint of the plaintiff alleges in substance, that the defendant, on the 1st day of June, 1859, was indebted to him in the sum of $120 for money lent, and also in the further sum of $231.13 the amount of a promissory note and interest thereon, executed by the defendant to him, the whole of which said indebtedness then amounted to $335.13, and that on that day the defendant proposed to give him a new note for the amount of such indebtedness, and to induce him to accept it proposed to secure the payment thereof by mortgage on certain real estate, and that the defendant did then execute a note to the plaintiff, whereby he promised to pay the plaintiff the said sum of $351.13 in one year from that time, with *fifty dollars interest,* and if not paid when due, to draw interest at the rate of fifteen per cent. per annum thereafter until paid; that the plaintiff is a German and could not read or write either the English or German languages, and could not have understood the note had it been read to him in the English language, and that he was ignorant of the terms and conditions of the note when it was given, all of which the defendant then well knew; that the defendant fraudulently represented to him that the note was a legal and valid note, drawing interest at the rate of only seven per cent. per annum, when he well knew that the

Meshke vs. Van Doren.

same was illegal and void, and was written and intended by the defendant to be wholly void, and that the plaintiff relying on such fraudulent representations gave up and surrendered the former note of $231.13 and discharged the debt of $120 for money lent, in consideration of the execution and delivery to him by the defendant of the note for $351.13, and that there was no agreement between them for any higher rate of interest than seven per centum per annum ; and the plaintiff claimed judgment for the sum of $351.13 with interest from June 1, 1859, at the rate of seven per cent.

The answer of the defendant admitted that an indebtedness on the part of the defendant to the plaintiff existed, on the 1st of June 1859, but alleged that the note of that date of $351.-13, mentioned in the complaint was given, and received by the plaintiff, in full satisfaction thereof and alleged that the amount of interest therein stipulated to be paid, was pursuant to an unlawful, corrupt and usurious agreement, then made between the parties to that effect, and specifically denied each of the allegations of frauds and deceit contained in the complaint. At the trial the defendant objected to the introduction of any evidence under the complaint, for the reasons. 1st. The court being one of limited jurisdiction, that fact must be averred in the complaint. 2d. The complaint does not show any present indebtedness, the allegation being that the defendant on the 1st of June, 1859, *was* indebted and does not allege that he is still indebted to the plaintiff. The court overruled the first objection and allowed the plaintiff to amend by adding an allegation of present indebtedness to obviate the second objection, *instanter*, and without the payment of costs, to which ruling the defendant excepted. The defendant's counsel insisted that the amended complaint should be served, and that he should have time to demur or to answer thereto, but the court ruled that the defendant must demur or answer *in stanter*, and that no delay should be allowed, unless cause therefor was shown by affidavit, to which ruling the defendant

excepted. The plaintiff then amended his complaint by inserting an allegation of present indebtedness, interlining the same in the original complaint on file, and which had been verified by the plaintiff. The defendant's counsel objected to amending the complaint by interlineation, as it had been verified by the plaintiff. The court overruled the objection and the defendant excepted. The cause was tried before the court and a jury, and such other rulings and decisions of the court below and the facts upon which they were made are sufficiently stated in the opinion of the court.

*C. Coolbaugh*, for appellant.

*Whittemore & Weisbrod*, for respondent.

*By the Court*, COLE, J. There is a great number of exceptions contained in this record. Many of them we consider quite immaterial or not of sufficient importance to require notice here. Indeed, the case seems to have been tried upon the idea that everything must be objected to and as a consequence we have a multiplicity of exceptions. Only a few of the more material ones will be specially considered.

The action was brought by the respondent in the county court of *Winnebago* county, to recover the sum of $120 which had been loaned the appellant, and likewise the sum of $231,13 the amount of a promissory note given by the appellant. On the trial, objection was taken to the admission of any evidence under the complaint, for the reason that it was not alleged that the court had jurisdiction of the action; and because there was no averment of present indebtedness. The court held the first ground of objection untenable and permitted an amendment to the complaint to obviate the other objection.

The ruling of the court was undoubtedly correct. The law of 1860, (S. Laws 1860, chap. 391,) conferring upon the county court of *Winnebago* county, jurisdiction in civil cases equal to and concurrent with the circuit court for all sums not exceeding five hundred dollars, was a public act of which the

court would take judicial notice, and a bare inspection of the complaint would · show that the court had jurisdiction of the action.

The amendment which was allowed to obviate a technical objection to the complaint, was very proper under the circumstances. Even conceding it was necessary, it could not possibly injure any one. Nor can we see any valid objection to the manner in which the amendment was made. At the commencement of the trial and before any evidence was given, the counsel for the defendant requested the judge to reduce his charge to writing, and it is now objected that this was not done. This has been sufficiently answered by the remark, that the record fails to show whether this request was complied with or not. In the absence of anything to the contrary, we must presume that the charge was in writing. Besides it would seem to be anticipating matters somewhat, to make such a request even before any evidence was introduced, and before it was known that there would be any case to go to the jury. But there is no necessity for dwelling upon this point further in the present state of the record. The other principal exceptions, are those which arise upon the refusal of the court to give the instructions which were asked on the part of the defendant and also the exceptions taken to the charge which was given

It was insisted that the rule of damages laid down by the court was incorrect. The action was commenced by a summons and attachment upon which a quantity of wheat belonging to the defendant was seized. There was a traverse of the affidavit for the attachment and this issue was found against the plaintiff. The court thereupon dissolved the attachment and ordered the wheat to be re-delivered to the defendant. On the trial of the main issue, the defendant claimed to recover the damages sustained by him by reason of the taking and detention of the wheat, and that such damages should be assessed and allowed as an off-set to the plaintiff's demand. On this point the court instructed the jury, that the measure of

damages for the taking and detention of the wheat was the difference in the value of the wheat at the time it was taken out of defendant's possession by the sheriff, and its value at the time of its re-delivery. And further that the jury might give the defendant as damages in their discretion, interest from the time of the taking to such re-delivery. The court further instructed the jury in effect, that they must determine from the evidence what damage the defendant had sustained by reason of the attachment of his property, and likewise the amount of costs which he had obtained on the trial of the traverse and apply such sums as an offset.

We think these instructions substantially correct in view of the evidence. The testimony showed that wheat bore about the same market value when seized upon the attachment and when re-delivered to the defendant. In the intermediate period, it appeared there was considerable rise in the price for a day or so. The defendant claimed that he should have the benefit of this rise in the value, although he did not show that he could or would have sold at that price. He was of course entitled to recover damages for any loss which he had sustained in consequence of being deprived of the use and control of his property during the pendency of the attachment, or for any injury thereto or loss thereof, together with costs incurred by him on the trial of the traverse. S. 26, chap. 130, R. S., 1859; *Dunning vs. Humphrey*, 24 Wend., 31; *Groat vs. Gillpin*, 25 id., 383; *Pettit vs. Mercer*, 8 B. Monroe, 51.

These damages the jury were directed to allow him under the rule laid down by the court. But to have permitted him to recover the difference between the highest market value of the wheat at any time during the pendency of the attachment, and the value when re-delivered to him without giving any testimony that he could or would have availed himself of that opportunity to sell it, seems to us would have been erroneous. Such a rule would be giving damages for injuries which the party had never sustained.

We have already stated that the action was brought to recover $120, money lent, and also the amount of a promissory note for $231.13, given by the appellant to the respondent sometime before June 1, 1859. In his answer, the appellant, after admitting this indebtedness, proceeds to state and allege in avoidance and as a defense to the action, that on the 1st day of June, 1859, at the instance and request of the respondent, he gave him a promissory note for $351.13, payable one year from date, with fifty dollars interest, and that the note was taken and received by the respondent in full payment and discharge of such prior indebtedness. And he further insists and alleges that this last note is usurious and void. This defense was sustained on the trial by the testimony, and must have the effect to defeat the action, if a valid existing indebtedness can be discharged by a void and usurious security. The appellant contends that the receipt of the usurious note and mortgage accompanying it, had the effect to extinguish the previous indebtedness. The court, however, denied the soundness of this position, and in substance instructed the jury that taking the usurious note did not discharge and satisfy the pre-existing indebtedness, even though so intended by the parties, but that the respondent might recover upon it. It is claimed that this instruction is erroneous. It cannot be denied that it is in strict harmony with the general course of decisions upon this subject, both in this country and in England. For no principle of law has been more clearly laid down in numerous and most carefully considered cases than, that a valid subsisting debt is not destroyed by a void and usurious security. The following cases upon the point have come under my observation while considering this question, and I have no doubt the list might be greatly increased. They are sufficient in number and respectability to show what the law upon the subject has been declared to be : *Ferrial vs. Shaven,* 1 Saunders R., 295, note 1; *Rex vs, Allen,* Sir T. Raymond's R., 197; *The Queen vs. Sewel,* 7 Modern, 119; *Gray vs. Fowler,* 1 H. Black-

stone, R., 462 ; *Fassil vs. Broukes*, 2 C. & P., 314 ; *Phillips vs. Cockayne*, 3 Campbell, 119 ; *Bush vs. Livingston*, 2 Caines' Cases in Error, 66 ; *Swartwout vs. Payne*, 19 Johns., 293 ; *Hughes vs. Wheeler*, 8 Cowen, 77 ; *Merrill vs. Law*, 9 id., 65 ; *Rice vs. Welling*, 5 Wend., 595 ; *Hammond vs. Hopping*, 13 id., 505 ; *Vilas, et al, vs. Jones, et al*, 1 Comstock, 276 ; *Johnson vs. Johnson*, 11 Mass., 359 ; *Parker vs. Cousens*, 2 Grattan, 372 ; *Trautman vs. Barnett*, 9 Geo., 30. The doctrine of these cases has been fully recognized and approved by this court in *Eastman vs. Porter*, 14 Wis., 39. In this case, the chief justice, in alluding to the origin and reason of the rule, says : " It is a clear rule of the common law, that a subsisting simple contract is not discharged or relinquished by the acceptance of another contract of the same nature, given by the same party, and founded upon the same consideration, unless it be expressly so agreed. If a valid new contract or security does not extinguish or destroy the pre-existing debt for which it is given, it would be very strange if a void one were to have that effect." And this is the clear and emphatic language of the cases, that a note void in its creation, for being usurious, will not defeat and destroy an existing liability, against which there is no defense. A contract originally valid, remains so, and stands unaffected by any subsequent arrangement which is utterly void.

It may be claimed that there is an inconsistency in the law, in enabling a party to abandon a subsequent usurious engagement, and fall back and recover upon the original indebtedness, when it would deny an action to recover back money or any chattel paid and delivered in pursuance of the usurious agreement. It is true that a party is not permitted to recover back money or property once paid or applied in satisfaction of an usurious debt. Such payment is considered a voluntary one, and in equity the courts say the lender is entitled to retain the amount actually loaned with interest. And while they will refuse to enforce a usurious contract, yet, when executed, they permit it to stand. So it is said, a contract fair un-

der the law when made, is fair to the end. It shall not be deemed merged in or extinguished, by any subsequent usurious contract relied on to destroy it. As I understand the cases, this is the distinction, and whether founded in reason and sound principles, I am disposed to adhere to the settled law upon the subject.

These remarks dispose of all of the questions upon the instructions which we deem material or necessary to be noticed.

The judgment of the county court is affirmed.

PAINE, J., *dissenting.* I cannot assent to the decision of the court in this case, which I think can be sustained only upon the principle that the usurer may himself repudiate his contract on account of the usury, and regain all that he parted with by the contract.

This action was brought to recover certain sums of indebtedness, in part for money lent and advanced, and in part by promissory note. But it appeared upon the face of the complaint, that the note had been surrendered as paid, and the balance of the indebtedness had been discharged by a new agreement of the parties. There is no room for question upon the allegations of the complaint, that the parties agreed that the new note should be taken in payment of all the prior indebtedness. The very *gravamen* of the complaint is, that the plaintiff had been defrauded into a contract by which he had discharged an existing valid indebtedness, by the false representations of the defendant, that the new note which he took in payment was a legal and valid note.

If these allegations had been sustained, it would undoubtedly have shown a good cause of action. If a debtor, taking advantage of the fact that his creditor was unacquainted with the English language, and with our laws, should fraudulently induce him to agree to discharge a prior indebtedness, in consideration of a new usurious note, by representing the latter to be valid and legal, there is no doubt the fraud would avoid

the new contract, and the creditor would be restored to his former rights. But there was proof, from which the jury might have found that no fraud whatever was practiced upon the plaintiff, but that he made the agreement with the full knowledge of the sum reserved for interest, and with the intent to exact it whether lawful or not.

Upon this state of proof, the defendant's counsel asked the following instruction: " That if the jury are satisfied from the admissions contained in the plaintiff's complaint and from the evidence in the case, that the note was given by the defendant to the plaintiff and received by him in satisfaction of the original notes or demands, and that there was no fraud practiced upon the plaintiff by the defendant, that then in that case, the original demand is discharged, and the plaintiff cannot recover upon the original demand."

This instruction was refused and it is manifest, that the refusal can only be sustained upon the theory that the usurer, who has deliberately made an usurious contract, by which he agreed to receive a note in absolute payment of a prior indebtness, may himself, repudiate the agreement on account of the usury, and be restored to all the rights which by its terms he had released. To hold that he can do this seems to me to be in violation of well settled principles. I admit there is a class of cases referred to in the opinion of the court, which have held, that the lender may recover upon a prior indebtedness although he had received a new usurious security in absolute payment, after such new security had been avoided or repudiated by the borrower on account of the usury. But I think no case has held that he may do so before that. And it cannot be so held without overturning principles universally recognized as applicable to such contracts. The usurer is looked upon as a wrong doer. He is placed upon the same footing with the fraudulent party to a fraudulent contract. It may be avoided by the other party on account of the wrong, but never by him. This rule is too well settled to need a reference to authorities. It has

been fully recognized by this court in a case decided since this, *Gregg vs. Riley*, 16 Wis., *seq.* We there held, that if the creditor makes an usurious agreement with the principal debtor to extend the time of payment, it discharges the surety, and that it did not lie with the creditor to proceed as though he had made no such agreement, and then, when it was set up, against him, to plead that it was void and of no effect by reason of his usury. The principle of that decision seems to me directly in conflict with the decision in this case. For here, the court holds that the usurer may sue on a prior indebtedness, which he had agreed to extinguish in consideration of a new usurious security, and when his agreement, that it should be extinguished is set up in defence, they say he may avoid the defense by replying that his agreement was void for usury. The cases of *La Farge vs. Herter*, 5 Selden, and *Miller vs. Kerr*, 1 Bailey, 4, are direct authorities against the right of the plaintiff to maintain this action, upon the mere ground that the new security was usurious. It did not appear that at the time this action was brought, the defendant had ever done any act disaffirming the new note, on account of the usury provided for on its face. It is true that he sets up the giving of that note in satisfaction of the debts now sued for; but this he must necessarily do to avail himself of that defense. It is also true, that he avers it to have been usurious and void, but this action not having been brought upon that note, such an allegation cannot amount to any avoidance of it, on account of the usury. The defendant's real defense here, was that this indebtedness had been discharged. The fact that in showing this, he showed that it was discharged in consideration of a new note, which he might avoid for usury, does not of itself amount to such avoidance. Notwithstanding this, he might in an action on that note decline to plead the usury. Besides this, it is a general rule that to sustain an action, it must have been sustainable when brought. So that there is nothing to relieve the decision of the court from holding, that the usurer who has dis-

charged a debt by a usurious contract may nevertheless sue for that debt and avoid the discharge, by pleading his own usury. But I do not wish to rest my dissent upon the fact that this suit was brought, without any act of disaffirmance of the usurious note by the borrower. Even if he had disaffirmed'it, if a suit had been brought on it, and he had successfully defended on account of the usury, I should still hold the same conclusion. I have admitted that upon such a state of facts there is a class of cases against me. But they seem to me to be in direct violation of principle, and to have introduced an unfounded distinction between usurious contracts, where the consideration moving from the usurer is the release of a prior indebtedness, and all other cases.

Thus, the usurer who has loaned his money at usurious interest under a law making the contract wholly void, cannot after payment has been avoided by the borrower on that ground, sue for the money actually loaned. If he sells a horse or any other article of property on an agreement that he is to give time of payment at usurious interest, he cannot after the payment has been avoided, recover the horse or other property. And why not? Simply because upon grounds of public policy the law will not aid one to recover what he has parted with on an illegal contract, but will leave him exactly where he placed himself by the contract. And if this is so, what distinction is there between such cases, and one where he parts with his right to enforce a prior indebtedness upon a usurious contract? I can see none whatever. If he cannot have back his horse that he has agreed to sell on a usurious contract, why should he have back his debt that he agreed to extinguish on a usurious contract? In the one case the consideration is the transfer of a tangible piece of property; in the other it is the transfer or extinguishment of an intangible chose in action. Each is a thing of value, constituting a good consideration for a contract, and entirely subject to the disposition and control of the owner. Is there any sound reasoning by which it can be

Meshke vs. Van Doren.

shown, that where he parts with one on a usurious contract he shall not have it back, but where he parts with the other he may? I think not. And the usurer who is denied the right to replevy his horse after payment has been avoided by the purchaser, may well complain when the same court allows another usurer to recover his former debt which he had agreed to extinguish.

The court say in *Johnson vs. Johnson*, 11 Mass., 362, that because the new note was void for usury and having been avoided by the maker, it could have no effect on the original contract. It said this, assuming that the contract of the parties was, that the note was taken in payment of the prior debt. But if this reasoning was good there, I cannot see why it would not be just as good in case of the sale of a horse. The note given for him is avoided for usury, and the vendor replevies him and proves his title, leaving out of view the usurious sale to the defendant. The defendant, however, proves that sale, and then the vendor replies that as the contract of sale was void and had been avoided by the purchaser, it could have no effect upon his title to the horse and so he must recover. Would the court sustain such a position? Certainly not. Yet the reasoning is just as good in such a case, as where the usurer by his usurious contract discharged a prior debt. The rule should be uniform, and if the law says upon grounds of public policy, that his usurious contract shall be good to deprive him of one thing of value, which he has agreed by it to part with, it should say the same with respect to any other thing of value about which he has made the same agreement. A difference in the nature of the consideration which he has given for a usurious security, can create no distinction as to the principle which should determine whether he should be restored to his former position, after that security was avoided.

The current of authority sustains the position, that the mere giving of a new note for a prior debt, does not necessarily extinguish that debt; and of course in such a case, although the

note was usurious, the prior debt could be recovered. But the same authorities hold that it is entirely competent for the parties by their agreement to take a new security in absolute payment of a prior debt; and this being so, if effect is given to a usurious contract to deprive the usurer of any other right, it should have effect to deprive him of a right to a prior debt when such was his express agreement.

For these reasons, I think the judgment should be reversed.